IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES HAAS,

        Plaintiff,

v.                 //    CIVIL ACTION NO. 1:17CV108
                                  (Judge Keeley)

ANTERO RESOURCES CORPORATION,
DEEPWELL ENERGY SERVICES, LLC,
and TK STANLEY, INC.

        Defendants.


**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

---

This action for negligence arises out of a workplace incident resulting in bodily injury to the plaintiff, Charles Haas ("Haas"). Pending before the Court are cross-motions for summary judgment on defendant TK Stanley, Inc. ("TK Stanley")'s affirmative defense regarding the statute of limitations (Dkt. Nos. 82, 83). Also pending is defendant DeepWell Energy Services, LLC ("DeepWell")'s motion for summary judgment (Dkt. No. 86).

For the reasons that follow, the Court holds that Haas's claims against TK Stanley are not barred by the applicable statute of limitations. Consequently, it **DENIES** TK Stanley's motion (Dkt. No. 82) and **GRANTS** Haas's motion (Dkt. No. 83). Further, the Court **GRANTS** DeepWell's motion (Dkt. No. 86) and **DISMISSES WITH PREJUDICE** the claims asserted against it in the Amended Complaint.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 25, 2015, Haas sustained severe injuries while
working on defendant Antero Resources Corporation ("Antero")'s
Fritz Well Pad, a natural gas drilling site located in Doddridge
County, West Virginia. Haas contends that his injuries were caused
by the negligent release of four (4) thousand-pound pipes from a
forklift operated by Jordan Stalnaker ("Stalnaker"). Apparently,
Stalnaker released the pipes on an incline, causing them to roll at
a high speed and strike Haas, who had been assigned to hand-roll
and stack the pipes as Stalnaker released them onto a multilayer
pipe rack ("the Incident"). At the time of the Incident, Stalnaker
was employed by TK Stanley, which was wholly owned by DeepWell.[1]

Haas initiated this action by filing a complaint ("Original
Complaint") against Antero and DeepWell in the Circuit Court of
Doddridge County, West Virginia, on February 23, 2017. See Dkt. No.
1-2. The Original Complaint asserted theories of negligence and

---

[1] At this time, Haas was employed by Inspection Oilfield
Services ("IOS"), a subcontractor of Antero and a non-party to this
litigation. IOS had, in turn, contracted with TK Stanley for the
provision of certain services on site, including the use of the
forklift operated by Stalnaker.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

vicarious liability against Antero and DeepWell, alleging that a
"forklift driver acting in the employ/agency and at the direction
of Defendants [Antero] and/or [DeepWell] released 4 pipe [sic] on
a steep incline causing [them] to roll at an extremely fast pace"
and strike him. Id. at ¶ 7. In its Answer to the Original
Complaint, DeepWell admitted that the forklift driver, who has
since been identified as Stalnaker, was its employee or agent, and
that he was operating under its direction at the time of the
Incident. Antero and DeepWell properly removed the case to this
Court on June 19, 2017 (Dkt. No. 1).[2]

On September 5, 2017, over six (6) months after the filing of
the Original Complaint and over two (2) years after the Incident,
Haas filed an Amended Complaint alleging the same injuries and
damages and joining TK Stanley as a defendant (Dkt. No. 13).

_____

[2] Antero and DeepWell initially filed a Notice of Removal on
March 29, 2017. Haas thereafter moved to remand the case on the
basis that the defendants had failed to satisfy their burden of
proving the amount-in-controversy requirement. Subsequently, on
April 7, 2017, the parties stipulated to remand the case to the
Circuit Court of Doddridge County; however, the defendants reserved
their right to remove the case in the future, should discovery
reveal that the amount in controversy exceeded the jurisdictional
threshold for removal.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

According to the Amended Complaint, Haas did not become aware of
Stalnaker's employment status with TK Stanley until sometime after
June 22, 2017, when DeepWell provided discovery responses
indicating that, despite its prior admission to the contrary,
Stalnaker was not employed by DeepWell at the time of the Incident,
and that, instead, he was employed by TK Stanley. Id. at ¶¶ 14-16.

In light of this information, Haas asserts in the Amended
Complaint that Stalnaker "was acting in the employ/agency and at
the direction of [DeepWell], and/or [TK Stanley] when he was
unloading pipe at the . . . Fritz Pad." Id. at ¶ 20. Thus, Haas
alleges that his injuries were caused by the combined negligence of
Antero, TK Stanley, and DeepWell (collectively, "the defendants"),
and that the defendants are vicariously liable for Stalnaker's
actions. Id. at 3-9. He further asserts that, "given the
significant overlap in corporate control" between TK Stanley and
DeepWell, TK Stanley "knew or should have known of the existence of
this action and its vicarious liability for" Stalnaker's actions
related to the Incident. Id. at ¶ 17. Consistent with its discovery
responses, DeepWell, in its Answer to the Amended Complaint, denied
that Stalnaker was its employee at the time of the alleged Incident

4

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

(Dkt. No. 18 at ¶ 6). In its Answer, TK Stanley asserted that
Haas's claims against it are barred by the applicable two-year
statute of limitations (Dkt. No. 23 at 19).

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling
on a motion for summary judgment, the Court reviews all the
evidence "in the light most favorable" to the nonmoving party.
Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846,
850 (4th Cir. 2000). The Court must avoid weighing the evidence or
determining its truth and limit its inquiry solely to a
determination of whether genuine issues of triable fact exist.
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the
Court of the basis for the motion and of establishing the
nonexistence of genuine issues of fact. Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986). Once the moving party has made the

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82], GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

## III. DISCUSSION

### A.    TK Stanley

In its motion for summary judgment on its affirmative defense regarding the statute of limitations (Dkt. No. 82), TK Stanley argues that "there is no evidence that TK Stanley was aware or should have been aware of the instant action prior to being served with the Amended Complaint," after the expiration of the applicable limitations period. (Dkt. No. 82-2 at 3). Haas has filed a cross-motion for summary judgment on this issue (Dkt. No. 83), arguing that his claims against TK Stanley "relate back" to his Original Complaint under Federal Rule of Civil Procedure 15(c)(1)(C) and therefore are not barred by the statute of limitations (Dkt. No. 84).

6

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

### 1.    Statute of Limitations

Under West Virginia law, the period to bring a claim for
personal injury is two years. W. Va. Code § 55-2-12. The two-year
statute of limitations for personal injury actions begins to run
when the right to bring action an accrues, that is, when injury is
inflicted. Id.

Here, the parties do not dispute that a two-year statute of
limitations applies to Haas's claims against TK Stanley, or that
the Incident giving rise to his claims occurred on March 25, 2015.
Based on Haas's allegations regarding the severe bodily injuries he
sustained as a result of the Incident, he clearly knew, or had
reason to know, of the injury giving rise to his action on that
date. Accordingly, his claims accrued--and the statute of
limitations began to run--on March 25, 2015. Haas therefore needed
to file his claims against TK Stanley no later than two years from
that date, or by March 25, 2017. As discussed, Haas did not allege
any claims against TK Stanley until September 5, 2017, when he
filed his Amended Complaint (Dkt. No. 13).

A finding that Haas's claims against TK Stanley were filed
after the expiration of the limitations period does not end the

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

Court's inquiry, however. It must also consider whether the claims

against TK Stanley, first asserted in Haas's Amended Complaint, are

saved by the relation back authorized by Federal Rule of Civil

Procedure 15(c). Relation back would give the Amended Complaint the

filing date of the Original Complaint, which the parties agree was

timely filed.

**2.    Relation Back**

Rule 15(c)(1)(C) provides that an amendment to a pleading that

changes a party or a party's name relates back to the date of the

original pleading

> if Rule 15(c)(1)(B) is satisfied and if, within the
> period provided by Rule 4(m) for serving the summons and
> complaint,[3] the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not
> be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have
> been brought against it, but for a mistake concerning the
> proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

---

[3] Rule 4(m) requires service of the summons and complaint
within 90 days of the complaint's filing, absent good cause for
extending the service. Fed. R. Civ. P. 4(m).

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

"All three conditions of Rule 15(c)(1)(C) must be met in order
for relation back to be permissible." Denmark v. Starcher, No.
1:14CV58, 2014 WL 7272789, at *6 (N.D. W. Va. Dec. 18, 2014)
(quoting Francis v. Woody, No. 3:09CV235, 2009 WL 2371509, at *6
(E.D. Va. July 31, 2009)); see also Robinson v. Clipse, 602 F.3d
605, 608 (4th Cir. 2010) (explaining that when a proposed amendment
changes the party against whom a claim is asserted, the amending
party must satisfy the requirements set forth in Rule
15(c)(1)(C)(i) and (ii)). This rule "presumes that the amending
party can make the amendment, although it does constrain
substantially the type of amendment that may relate back." Goodman
v. Praxair, Inc., 494 F.3d 458, 469 (4th Cir. 2007) (en banc).

"Where an amendment seeks to add a defendant, the focus turns
to the notice to that individual or entity." Wilkins v. Montgomery,
751 F.3d 214, 224 (4th Cir. 2014). Specifically, as to Rule
15(c)(1)(C)(ii), the Supreme Court has clarified, "The question .
. . is not whether [the amending party] knew or should have known
the identity of . . . the proper defendant, but whether [the
potential defendant] knew or should have known that it would have
been named as a defendant but for an error." Krupski v. Costa

9

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

<u>Crociere</u>, 560 U.S. 538, 548 (2010) (holding that amended complaint

should relate back because the district court found that the added

party had "constructive notice" of the initial complaint within the

Rule 4(m) period). The Fourth Circuit has further explained that

> Rule [15]'s description of when such an amendment relates
> back to the original pleading focuses on the *notice to
> the new party* and *the effect on the new party* that the
> amendment will have. These core requirements preserve for
> the new party the protections of a statute of
> limitations. They assure that the new party had adequate
> notice within the limitations period and was not
> prejudiced by being added to the litigation.

<u>Goodman</u>, 494 F.3d at 470 (citation omitted) (emphasis in original).

Here, it is undisputed that the Amended Complaint meets the

first requirement of Rule 15(c)(1)(C)--that Rule 15(c)(1)(B)'s

requirement is satisfied, that is, the newly-asserted claims "arise

out of" conduct alleged in the original pleading. Likewise, the

parties do not dispute that the second-prong of Rule

15(c)(1)(C)(ii) is satisfied because Haas made a "mistake" by not

naming TK Stanley as a defendant in his Original Complaint.

Thus, the Court must address whether, within the Rule 4(m)

service period for the filing of the Original Complaint, or by May

24, 2017, TK Stanley (1) received such notice of the action such

10

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

that it would not have prejudiced it "in defending on the merits,"
and (2) "knew or should have known that [Haas's] action would have
been brought against it, but for a mistake concerning the proper
party's identity." Fed. R. Civ. P. 15(c)(1)(C).[4] Notably, although
TK Stanley argues that it did not have notice within the Rule 4(m)
service period, it does not argue that it would suffer any
cognizable prejudice as a result of relation back.

## 3. Analysis

TK Stanley asserts that Haas "has failed to present evidence
that [it] received notice of the action within 90 days of the
filing of the Original Complaint," i.e., on or before May 24, 2017
(Dkt. No. 82-2 at 4-5). It further argues that it did not know, nor
should it have known, "that the action would have been brought
against it within 90 days of the filing of the [Original]
[C]omplaint." Id. at 5. Haas contends that, "given the significant
overlap in corporate control" between DeepWell and TK Stanley,
there is no genuine dispute that TK Stanley had timely notice of

---

[4] Put differently, the "limitations period" for purposes of
analyzing whether a newly-added defendant received notice and
should have had knowledge of the action is the Federal Rule of
Civil Procedure 4(m) service period. Fed. R. Civ. P. 15(c)(1)(C).

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

the Original Complaint, or that it knew or should have known,
during the relevant limitations period, that this action would have
been brought against it, but for his mistake concerning its
identity (Dkt. Nos. 13; 84 at 1).

Given the parties' contentions on summary judgment, a brief
history of the relationship between DeepWell and TK Stanley at the
times relevant to this action is appropriate. Prior to January
2015, all or most of the outstanding stock of TK Stanley was owned
by relatives Cecil Farrar and Cary Farrar ("the Farrars"), while
the company retained 75 shares of its own stock. On January 13,
2015, TK Stanley sold its 75 shares of common stock to DeepWell
(Dkt. Nos. 82-2 at 5, 82-4). Shortly thereafter, on January 22,
2015, the Farrars sold their outstanding shares back to TK Stanley,
making DeepWell the sole owner of all of the equity in TK Stanley.
See Dkt. Nos. 84-7, 84-8, 84-10. Thus, at the time of the Incident
giving rise to this action, March 25, 2015, TK Stanley was wholly
owned by DeepWell.

Then, in November 2015, DeepWell sold all of its equity in TK
Stanley to Duff Timber Holdings, LLC, through a sale to a company
named Duff Capital Investors (Dkt. No. 84-10). Notably, Duff

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

Capital Investors was the sole member of a company called
Investment Transportation Services, LLC, which was, in turn, the
sole member of DeepWell. Id. Thus, by November 30, 2015, although
DeepWell owned no equity in TK Stanley, both TK Stanley and
DeepWell had been rolled into the same ownership and management
group that applies to a group of closely related companies owned by
brothers Thomas and James Duff. Finally, on January 1, 2016,
DeepWell "took over" the oilfield operations previously performed
by TK Stanley (Dkt. No. 84-11).

The Original Complaint was served on DeepWell via the West
Virginia Secretary of State on March 1, 2017 (Dkt. No. 82-5). One
day prior, Dicky Dickerson ("Dickerson"), a DeepWell dispatcher,
had received and signed for the Original Complaint at 6739 Highway
184, Waynesboro, Mississippi ("the Waynesboro address") (Dkt. No.
82-6). Dickerson thereafter delivered the Original Complaint to
Chris Breedlove ("Breedlove"), DeepWell's Risk Management Director,
at Highway 35 North, Columbia, Mississippi ("the Columbia
address"), on March 3, 2017. Id.

It is undisputed that, as of March 2017, DeepWell represented
to the West Virginia Secretary of State that its Principal Office

13

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

was located at the Waynesboro address (Dkt. No. 84-14). According
to DeepWell, however, although its headquarters previously were
located at the Waynesboro address, since January 1, 2016, they have
been located at the Columbia address (Dkt. No. 82-2). Notably, it
is also undisputed that TK Stanley's headquarters have been located
at the Waynesboro address for the last 40 or so years (Dkt. No. 82-
2).

When Breedlove received the Original Complaint on March 3,
2017, he was employed as DeepWell's Risk Management Director, a
role he has purportedly maintained throughout the pendency of this
action. During his deposition, Breedlove explained that, prior to
DeepWell's January 1, 2016 takeover of TK Stanley's oilfield
operations, he had been employed in the same risk management role
at TK Stanley. Thus, Breedlove was working in risk management at TK
Stanley at the time the Incident occurred in March 2015, but was no
longer employed there when Haas initiated this action in February
2017.

Breedlove further testified, however, that at the time he
received the Original Complaint, over a year after his employment
with TK Stanley allegedly had ended, he was still involved in the

14

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82], GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

risk management operations of TK Stanley, and, perhaps most critically, was still the person designated to receive complaints and handle claims on behalf of TK Stanley:

> Q.    You -- when did you receive process related to [this action?]
>
> A.    March 3rd.
>
> Q.    Of 2017?
>
> A.    Correct.
>
> Q.    And you were working -- you were an employee of DeepWell at the time?
>
> A.    That's correct.
>
> Q.    Were you doing any work for TK Stanley? . . . **As of March 3rd, 2017, were you working for anybody, other than DeepWell?**
>
> A.    **I consulted on claims for DeepWell. I mean, TK Stanley. Excuse me. I was employed by DeepWell Energy Services.**
>
> Q.    Okay.  So, tell me about the consulting that you would do on claims for TK Stanley as of March of 2017. Tell me about that part of your job.
>
> A.    Well, obviously, these claims were still open claims and, you know, they had to be resolved.

\*\*\*

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

Q.   So, for something like this -- the date of the
     incident was --
MR. SMALLWOOD: March 25th, 2015.

Q.   -- March 25th, 2015. At that time, you were
     working for -- you were an employee of TK
     Stanley?

A.   Correct.

Q.   Okay. And since that was already out there, Mr.
     Haas' claim was already out there, so to speak,
     this incident had already occurred?

A.   Yes.

***

Q.   Okay. And when the incident occurred, you were an
     employee of TK Stanley?

A.   Yes.

Q.   Okay. And then, on January 1st, 2016, you went
     over to DeepWell?

A.   Yes.

Q.   **But you stayed involved in the incidents that had
     already happened, when you were at TK Stanley,
     for example, and Mr. Haas?**

A.   **Yes.**

Q.   Okay. And so -- so, for things like that, where
     the events happened while you were still working
     for TK Stanley, you stayed involved in those
     events. And then, when they turned into claims,
     you stayed involved in those claims, and

16

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

consulted with TK Stanley on those claims, even
though you were working for DeepWell?

A.    Yes.

***

Q.    Was it -- who was your -- you  were the  --
you're currently the risk management director at
DeepWell.  **Were  you DeepWell's risk management
director on March 3rd, 2017?**

A.    **Yes.**

Q.    **Okay. Who was your counterpart at TK Stanley in
March  of  2017?  Who  was  the  risk  management
director at TK Stanley in March-**

A.    **There was none.**

***

Q.    So, like you were saying for DeepWell, when a -
legal papers came in to the dispatcher, they knew
to send it to you. That's because you're the risk
management guy; right?

A.    For DeepWell Energy.

Q.    For DeepWell?

A.    Yes.

***

Q.    Okay, I'm  wondering  how  things  worked  at  TK
Stanley at the time. **How was TK Stanley handling
claims like that in March of 2017? Meaning, if a**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

> Complaint showed up with TK Stanley's name on it,
> what happened?
>
> A.    It would come to me.
>
> ***
>
> Q.    But was a process set up at TK Stanley, a process
>       in place -- that **if legal papers came in and TK
>       Stanley was a defendant, was there a process in
>       place at TK Stanley, in March of 2017, about what
>       would happen with that? How it would get from TK
>       Stanley, however it came in the door, to the
>       outside attorneys and insurance companies, was
>       there a process in place to handle that?**
>
> A.    **No. It was just known that they should probably
>       send it to Chris Breedlove.**

Dkt. No. 84-11 at 60-64, 76-78, 82 (emphasis added).

Thus, it is clear from his own deposition testimony that
Breedlove was, in effect, simultaneously acting as both DeepWell's
Risk Management Director *and* TK Stanley's Acting Risk Management
Director, on March 3, 2017. In point of fact, Breedlove conceded
that, had a complaint been filed against TK Stanley at that time,
"it would [have] come to [him]." Moreover, the fact that Breedlove,
while purportedly still employed as the Risk Management Director
solely for DeepWell, testified as the corporate representative for
TK Stanley in this action, does not escape the Court's notice.

18

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

Next, the Court observes that the Original Complaint plainly
described the precise nature and location of the Incident giving
rise to the action and alleged theories of negligence and vicarious
liability against DeepWell as Stalnaker's employer. See Dkt. No.
1-2 at ¶ 7 (alleging that a "forklift driver acting in the
employ/agency and at the direction of . . . DeepWell Energy
Services, LLC. . . . . released 4 pipe [sic] on a steep incline
causing [them] to roll at an extremely fast pace") (emphasis
added).

As Breedlove himself testified, DeepWell was not licensed to
conduct business in the state of West Virginia until after January
1, 2016, and therefore could not have been, and in fact was not,
performing any work at the Fritz Well Pad at the time the Incident
occurred in March 2015. Thus, from the face of the Original
Complaint, "[a]ny corporation maintaining reasonable business
records would be able rapidly to route the complaint" to the
appropriate entity responsible for the work conducted at the Fritz
Well Pad. See Goodman, 494 F.3d at 473.

Further, Stalnaker's own employment records available to
Breedlove similarly reflect that Stalnaker was not an employee of

19

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

DeepWell on the date of the Incident (Dkt. Nos. 84-11; 84-18). In
fact, like Breedlove and many others, Stalnaker worked for TK
Stanley through December 31, 2015, and became a DeepWell employee
on January 1, 2016, when DeepWell assumed TK Stanley's oilfield
operations (Dkt. No. 84-12). Thus, when the Original Complaint was
received in March of 2017, DeepWell would have known that the
persons performing oilfield operations for DeepWell in West
Virginia in 2016 or 2017 were not doing so in 2015, and, further,
were likely employees of TK Stanley at that time. Nonetheless,
despite the records available to it, DeepWell inexplicably
admitted, in its Answer to the Original Complaint, that it was
Stalnaker's employer at the time of the Incident. That Breedlove,
TK Stanley's corporate representative and then-acting risk
management officer, apparently "did not [personally] believe that
Stalnaker was an employee of TK Stanley" when he received the
Original Complaint, and apparently "did not realize" that fact
until months later, is not dispositive.

Finally, under the circumstances presented here, the Original
Complaint's unambiguous intent to sue Stalnaker's employer, as well
as Breedlove's knowledge, both actual and constructive, may be

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

imputed to TK Stanley, because DeepWell and TK Stanley are, and at
the relevant time were, closely related business entities
represented by the same acting risk management director. The Fourth
Circuit has concluded that "when a plaintiff alleges a
comprehensible claim against one of a group of closely related and
functioning business entities or corporations, the other entities
in that group, *barring a contrary showing*, will be charged with
knowledge under Rule 15(c) . . . of the entity properly answerable
to the claim." See Goodman, 494 F.3d at 475 (emphasis added). Here,
TK Stanley, as a related entity of DeepWell, is "accordingly
imputed with knowledge of [Haas's] claims against it and of the
facts giving rise to that suit when the [O]riginal [C]omplaint was
served" in March 2017. Id.

Thus, it is clear from the record before the Court that (1)
Haas intended to sue Stalnaker's employer for negligence related to
an Incident arising from Stalnaker's operation of a forklift at the
Fritz Well Pad on March 25, 2015; (2) at the time of the Incident,
Stalnaker was employed by TK Stanley, which was wholly owned by
DeepWell; (3) Haas named DeepWell in the Original Complaint for
negligence arising from the Incident and Stalnaker's related

21

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

conduct; and (4) TK Stanley knew that, but for Haas's mistake in
pleading, TK Stanley would have been sued for negligence arising
from the same Incident and conduct. Haas's mistake therefore
"represents the difference between his unambiguous intent to sue
[Stalnaker's employer] and the defendant whom he actually named" in
the Original Complaint. Goodman, 494 F.3d at 474.

For these reasons, the Court concludes that TK Stanley
received notice of this action within the Rule 4(m) service period
for the filing of the Original Complaint, and, as Stalnaker's
employer, knew or should have known during that period that it was
a proper party to Haas's suit. Consequently, pursuant to Rule
15(c)(1)(C), the Amended Complaint relates back to the Original
Complaint. Therefore, the Court **DENIES** TK Stanley's motion for
summary judgment based on the running of the statute of limitations
(Dkt. No. 82), and **GRANTS** Haas's motion for summary judgment (Dkt.
No. 83) on this issue.

**B.    DeepWell**

DeepWell has also moved for summary judgment (Dkt. No. 86),
arguing that, as matter of law, it cannot be held liable for Haas's
alleged injuries, because Deepwell's liability, as pled in the

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82], GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

Amended Complaint, depends solely upon whether Deepwell was operating at the Fritz Well Pad on March 25, 2015, and whether Stalnaker was its employee at that time. Dkt. No. 87 at 3-5. In response, Haas asserts that, "at the time of the [I]ncident, Deepwell used TK Stanley as an alter ego to perform work in West Virginia" (Dkt. No. 92 at 4).

   **1.   *Respondeat Superior***

   "The doctrine of *respondeat superior* imposes liability on an employer for the tortious acts of its employees, not because the employer is at fault, but merely as a matter of public policy." Syl. Pt. 12, <u>Dunn v. Rockwell</u>, 689 S.E.2d 255, 259 (W. Va. 2009). Thus, "the employer may only be held liable to the extent that the employee can be held liable, and only for acts committed by the employee in the course of his or her employment." <u>Id.</u> Put differently, in order for an employer to be held liable for the negligence of a third party under the doctrine of *respondeat superior*, the third party must have been an employee of the employer acting within the scope of the employer-employee relationship at the time that the alleged negligence occurred.

23

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

As discussed earlier, DeepWell was not conducting business in
West Virginia on March 25, 2015. Rather, as evidenced by its
invoice to Antero, TK Stanley was operating at the Fritz Well Pad
on that date (Dkt. No. 86-15). Further, Stalnaker's employment
records reflect that he was employed by TK Stanley, not DeepWell,
at the time of the Incident, and Stalnaker's testimony confirms
that he remained an employee of TK Stanley through December 31,
2015 (Dkt. No. 84-12). Thus, the record supports the conclusion,
which Haas does not dispute, that Stalnaker was not employed by
Deepwell at the time of the Incident and therefore that Deepwell
cannot be liable for Stalnaker's alleged wrongdoing under a theory
of *respondeat superior*.

**2.   Alter Ego**

As a general rule, West Virginia law recognizes that
"separately incorporated businesses are separate [e]ntities and
that corporations are separate from their shareholders." Syl. Pt.
3, <u>Southern Elec. Supply Co. v. Raleigh County Nat'l Bank</u>, 320
S.E.2d 515 (W. Va. 1984). Although West Virginia law provides that
"'[j]ustice may require that courts look beyond the bare legal
relationship of the parties to prevent the corporate form from

24

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

being used to perpetrate justice, defeat public convenience or

justify wrong[,] . . . the corporate form will never be disregarded

lightly.'" <u>Laya v. Erin Homes, Inc.</u>, 352 S.E.2d 93, 97 (W. Va.

1986) (quoting <u>Southern States Cooperative, Inc. v. Dailey</u>, 280

S.E.2d 821, 827 (W. Va. 1981)).

As the Supreme Court of Appeals of West Virginia stated in

<u>Dailey</u>:

> The mere showing that one corporation is owned by another
> or that they share common officers is not a sufficient
> justification for a court to disregard their separate
> corporate structure. (internal citation omitted). Nor is
> mutuality of interest, without the countermingling of
> funds or property interests, or prejudice to creditors,
> sufficient. (internal citation omitted). Rather, it must
> be shown that the corporation is so organized and
> controlled to be a mere adjunct or instrumentality of the
> other.

280 S.E.2d at 827. When determining whether to ignore the

corporate form, "it is not easily proved and the burden of proof

is on a party soliciting a court to disregard a corporate

structure." <u>Raleigh County Nat'l Bank</u>, 320 S.E.2d at 522. If that

corporate form, or veil, is "pierced," then that corporation "may

be liable for behavior of another corporation within its total

control." <u>Id.</u>

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

When analyzing whether to pierce the corporate form, West
Virginia requires courts to engage in a case-by-case analysis,
"with particular attention to factual details." <u>Id.</u> at 523. In
particular, the following factors will determine whether to pierce
the corporate veil:

> Decisions to "pierce" involve multifarious
> considerations, including inadequacy of capital
> structures, whether personal and corporate funds have
> been commingled without regard to corporate form by a
> sole shareholder, whether two corporations have
> commingled their funds so that their accounts are
> interchangeable; whether they have failed to follow
> corporate formalities, siphoning funds from one
> corporation to another without regard to harm caused
> either entity, or failed to keep separate records. Other
> reasons to disregard the structure are: total control and
> dominance of one corporation by another or a shareholder;
> existence of a dummy corporation with no business
> activity or purpose; violation of law or public policy;
> a unity of interest and ownership that causes one party
> or entity to be indistinguishable from another; common
> shareholders, common officers and employees, and common
> facilities.

<u>Id.</u> When analyzing these factors, evidence related to them must be
"analyzed in conjunction with evidence that a corporation attempted
to use its corporate structure to perpetrate a fraud or do grave
injustice on an innocent third party seeking to 'pierce the veil.'"
<u>Id.</u> (internal citations omitted).

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

Here, as a threshold matter, in his Amended Complaint, Haas
alleges neither a theory of alter-ego liability, nor facts
sufficient to raise a right to relief under such a theory. See Dkt.
No. 13. Rather, Haas merely alleges that, at the time of the
Incident, DeepWell wholly owned TK Stanley; that the companies
shared certain officers and directors, id. at 3; and that there was
a "significant overlap in corporate control" between DeepWell and
TK Stanley. Id. at 4. It is clear that, under West Virginia law,
these factual allegations "fall woefully short of establishing that
mutual liability through piercing is 'plausible.'" Tucker v.
Thomas, 853 F. Supp. 2d 576, 591 (N.D. W. Va. 2012) (Stamp, J.).

Moreover, even if Haas had successfully pleaded an alter-ego
theory of liability, he has failed to provide sufficient evidence
that DeepWell failed to maintain the required corporate
formalities. At bottom, Haas relies on his contention that DeepWell
and TK Stanley "were so interrelated as to be inseparable," based
on what he describes as the "myriad factors linking" the companies
(Dkt. No. 92 at 2-3). While sharing the same physical address, and
having common ownership and management and the same officers and
members may be contributing factors, "without significantly more,

27

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

such evidence merely shows that these companies and people are related to each other, not that they are actually a single entity and are abusing the corporate form for some nefarious purpose." <u>Tucker</u>, 853 F. Supp. 2d at 591. Thus, at best, all that Haas has shown is that DeepWell and TK Stanley "are interrelated, not that the companies are mere instrumentalities of the members and managers who stand behind them." <u>Id.</u>

For these reasons, as a matter of law, Haas cannot succeed in his action for negligence against DeepWell under either the doctrine of *respondeat superior* or an alter-ego theory of liability. Therefore, the Court **GRANTS** DeepWell's motion for summary judgment (Dkt. No. 86) and **DISMISSES WITH PREJUDICE** the claims asserted against it.

## IV. CONCLUSION

In summary, for the reasons discussed, the Court:

1.  **DENIES** TK Stanley's motion for summary judgment (Dkt. No. 82);

2.  **GRANTS** Haas's motion for partial summary judgment (Dkt. No. 83); and

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT TK
STANLEY, INC.'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 82],
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
[DKT. NO. 83], AND GRANTING DEFENDANT DEEPWELL ENERGY
SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 86]**

3.    **GRANTS** DeepWell's motion for summary judgment (Dkt. No.

86), and **DISMISSES WITH PREJUDICE** the claims asserted

against it in the Amended Complaint.

The case will proceed to trial as scheduled as to defendants Antero

and TK Stanley (Dkt. No. 12).

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this

Memorandum Opinion and Order to counsel of record and to enter a

separate judgment order with respect to defendant DeepWell Energy

Services, LLC.

DATED: December 14, 2018

                                        /s/ Irene M. Keeley
                                        IRENE M. KEELEY
                                        UNITED STATES DISTRICT JUDGE